**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**LARRY JAMES**                                                                **PLAINTIFFS**

**VS.**                                                **CIVIL ACTION NO.: 3:03CV525LN**

**CINCINNATI INCORPORATED, et al.**                                    **DEFENDANTS**

**RESPONSE OF DEFENDANT CINCINNATI INCORPORATED**
**IN OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE**
**AND MOTION FOR RULE 104 HEARING**

Cincinnati Incorporated ("Cincinnati") opposes Parts I and VI of Plaintiff's motion in limine because the Federal Rules of Evidence permit Cincinnati to prove its affirmative defenses -- that the actions of Plaintiff's employer, Hunter Engineering caused the accident and constitute an intervening/superseding cause under Mississippi law.  Cincinnati also opposes Part II of Plaintiff's motion in limine because the opinion of its expert, Charles Prewitt, meets the reliability standards of Federal Rule of Evidence 702.  Cincinnati does not oppose Parts III and IV of Plaintiff's motion in limine insofar as it seeks to preclude evidence of collateral benefits and settlements with other defendants.   Finally, Cincinnati agrees with Part V of Plaintiff's motion in limine so long as the same constraints apply to Plaintiff.

**I and VI.**        **Cincinnati is Entitled to Prove That Plaintiff's Employer Caused the Accident.**

In its affirmative defenses, Cincinnati claims that the actions of Plaintiff's employer, Hunter Engineering, constitute the sole proximate cause, a contributing cause, and/or an independent, intervening/superseding cause of the Plaintiff's accident.[1]  To prove its affirmative defenses, Cincinnati seeks to introduce OSHA standards, as well as documents and testimony showing that

---

[1]  3rd, 6th and 11th Defenses, Answer and Affirmative Defenses of Cincinnati Incorporated, pp. 1 and 3.

Hunter Engineering knew it had a duty to provide point-of-operation safeguarding for the bending operation that it designed using Cincinnati's multi-purpose press brake. Federal and Mississippi law agree that Cincinnati may introduce OSHA standards to prove that Hunter Engineering caused the accident, not the design of Cincinnati's press brake.

"Courts generally admit OSHA regulations under either the learned treatise or the 804(b)(5) catchall exception to the hearsay rule." *Vice v. Northern Telecom, Inc.*, 1996 WL 507340 (E.D. LA 1996)(copy attached as Exhibit 1). In particular, the Fifth Circuit has ruled that OSHA standards are admissible in cases like this one. In *Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231 (5th Cir. 1980), the plaintiff brought a products liability claim against a manufacturer of a powder-actuated nail gun for personal injuries. Over plaintiff's objection, the trial court allowed evidence of two OSHA standards that applied to the manner in which the fasteners should be used and the training required for employees using powder-actuated tools. On appeal, the plaintiff claimed that admission of the OSHA standards was error. The Fifth Circuit disagreed, held that the district court did not err in admitting the regulations into evidence, and found that the "violation of an OSHA regulation is evidence of negligence or, in appropriate circumstances, negligence per se." *Id.,* at 1238 (citations omitted). *See also, Jordan v. Kelly-Springfield Tire & Rubber Co.,* 624 F.2d 674, 676 (5th Cir 1980)(noting that expert testimony regarding OSHA standards was evidence that defendant satisfied the required standard of care).

Likewise, in *Coates v. AC and S, Inc.,* 844 F.Supp. 1126 (E.D.La.1994), the federal court considered the relevance of OSHA standards in a lengthy discussion and noted that the admissibility of various government documents has been discussed in numerous federal courts, including *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1182-83 (5th Cir. 1975) (admitting evidence of advisory material used the FAA.) The court then concluded that OSHA position papers were

properly admitted into evidence as relevant in a wrongful death action against manufacturers of asbestos products.

Mississippi state courts have also held that OSHA standards are admissible. The Mississippi Supreme Court recently held in *Accu-Fab v. Ladner,* 778 So.2d 766 (Miss. 2001), that OSHA standards were admissible in a wrongful death action to aid the jury in determining whether the actions complained of were consistent with industry standards. The trial court admitted evidence of OSHA standards, and the appellate court affirmed, noting that "OSHA standards were admissible to show the reasonableness of the actions of [defendants] and whether they were consistent with industry standards. *Id.*, 778 So.2d at 771. On review, the Mississippi Supreme Court noted that "evidence not admissible for one purpose may be admissible for another" and then concluded that "the OSHA regulations were not admitted to show negligence on the part of Defendants, but rather they were admitted only to be used as a measure of reasonable care consistent with industry standards." *Id. See also, Crane v. Kitzinger,* 860 So.2d 1196, 1199-1200 (Miss. 2003)(holding that excluding company handbook was error when it could have assisted the jury "in determining the reasonableness of defendant's actions and of the allocation of comparative fault"); *Wilkens v. Bloodsaw,* 850 So.2d 185, 187-188 (Miss. 2003)(reversing summary judgment because expert's affidavit cited ANSI and ASTM standards to show reasonable care consistent with industry standards); and *Jones v. Panola County,* 725, So.2d 774, 778-779 (Miss. 1998)(holding that the Manual on Uniform Traffic Control Devices standards were admissible).

Many other courts have held that OSHA regulations, as well as ANSI and government standards, are relevant and admissible. In *Slisze v. Stanley-Bostitch*, 979 P.2d 317, 319 (Utah 1999), though the court excluded testimony regarding foreign safety standards, the court admitted federal OSHA standards to show compliance with government standards in a product liability action against

nailer manufacturer.  In *Edwards v. ATRO SpA,* 891 F.Supp. 1074 (E.D.N.C.1995), the court

admitted industry standards in an action against a nail gun manufacturer.  In *Kershaw County Bd.*

*of Educ. v. United States Gypsum Co.,* 302 S.C. 390, 396-7, 396 S.E.2d 369, 372-3 (1990), the Court

admitted DHEC asbestos regulations into evidence because in part the regulations were not admitted

to establish liability.

In contrast to this abundant case authority, Plaintiff cites only three Pennsylvania cases in

which defendants did not attempt to introduce OSHA standards to prove that a third-party caused

or contributed to the accident.  Moreover, even Pennsylvania law recognizes that OSHA standards

may be admitted into evidence in cases like the present case.  In *Bunn v. Caterpillar Tractor Co.,*

415 F.Supp. 286, 292 (W.D. Pa. 1976), the court admitted OSHA safety codes into evidence to

support a claim against a tractor manufacturer that a given design was hazardous, even though the

codes had no binding effect on the defendant.  *Id*.  Likewise, in *Smith v. Hobart Manufacturing Co.,*

194 F.Supp. 530 (E.D. Pa. 1961)(reversed and remanded on other grounds, 302 F.2d 530,  531-532

(3d. Cir. 1962), the court admitted into evidence the Regulations of the Pennsylvania's Department

of Labor and Industry in a products liability action to determine if a meat grinder was reasonably

safe.  Finally, in the most recent Pennsylvania case cited by Plaintiff, the court specifically noted

the "limited applicability" of the rule.  *Forrest v. Beloit Corp.,* --- F.3d --- , 2005 WL 2245640 (3d.

Cir. 2005).

In sum, the Fifth Circuit has held that OSHA standards are admissible in products liability

actions like the present case.  Federal and state courts widely agree, and for good reason -- a

defendant has the right to prove its affirmative defenses.  In this case, Cincinnati has the right to

defend itself and to prove to the jury that Plaintiff's accident was caused by the actions of Hunter

Engineering in failing to safeguard its bending operation.  This Court should deny Plaintiff's motion

in limine and allow the admission of OSHA standards and evidence that Hunter Engineering knew of the safety issues in using press brakes.

**II.**     **The Opinion of Cincinnati's Expert Meets the Reliability Standards of Rule 702.**

Without any supporting citations to deposition transcripts, expert affidavits, or other evidentiary support, Plaintiff has moved in limine to exclude the testimony of Cincinnati's expert, Charles Prewitt.  As the sole support for his motion, Plaintiff refers to Mr. Prewitt's preliminary report rendered under FRCP 26(a)(2)(B) that was served on Plaintiff on August 16, 2004.[2]  Despite having Mr. Prewitt's report for over a year, Plaintiff has never taken any steps to depose Mr. Prewitt. Indeed, until he filed his motion on October 7, 2005, he had not even requested a list of Mr. Prewitt's publications, compensation information, or a list of his deposition and trial testimony.  Upon receiving Plaintiff's motion, Defendant immediately responded in its October 10 letter and provided documents listing Mr. Prewitt's publications, compensation, and deposition and trial testimony, copies of which are attached as Exhibit 3.

Contrary to Plaintiff's contention, Mr. Prewitt's report does satisfy the reliability standards of Rule 702 which allow a witness to testify "in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  As the Fifth Circuit has held, "The Supreme Court listed several non-exclusive factors to guide courts in their screening function:  whether the proposed evidence or theory "can be (and has been) tested"; whether it "has been subjected to peer review and publication"; whether it has been evaluated in the light of "potential rate[s] of error"; and whether the theory has been accepted in the "relevant scientific community."  *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir.

---

[2]  A copy of Mr. Prewitt's expert designation and report is attached as Exhibit 2.

2004), citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 2798-99 (1993).

Though Plaintiff wrongly asserts that Mr. Prewitt's preliminary report is "nothing more than a recitation of facts taken from the operations manual," Mr. Prewitt's factual recitation does build a foundation of "sufficient facts or data" under Rule 702 upon which to base his opinion. In addition, Mr. Prewitt's report cites extensively from published authorities -- OSHA regulations and the standards of the American National Standards Institute ("ANSI").[3]  Under a Rule 702 analysis, these authorities establish that the opinion expressed by Mr. Prewitt has been published, has been subjected to peer review, and has been generally accepted by the press brake community. Thus, as a result of reliable principles and methods, Mr. Prewitt arrived at his opinion concluding, among other things, that (1) the press brake was not defective, (2) it was sold in compliance with ANSI standards, and (3) according to OSHA and ANSI standards, Hunter Engineering was responsible for assuring that its bending operation with the press brake was adequately safeguarded.

Moreover, since drafting his preliminary report, Mr. Prewitt has actually inspected and tested the subject press brake. He has investigated and inspected the actual light curtain that Hunter Engineering installed on the press brake after the accident. He has conducted additional research, including reviewing the depositions of Plaintiff, co-workers, and Plaintiff's expert. Unlike Plaintiff's expert, he has also tested Plaintiff's theory and concluded that a light curtain would not adequately safeguard Hunter Engineering's bending operation. Instead, Hunter Engineering could have adequately safeguarded their bending operation by using the hand-foot control device on the machine that Cincinnati had originally provided.

Finally, Mr. Prewitt is more than qualified to present his opinions. Like Plaintiff's expert,

---

[3]  Preliminary Report of Charles Prewitt, pp. 2-5.

Mr. Prewitt has an academic background in mechanical engineering.  Unlike Plaintiff's expert, Mr. Prewitt has had many prior cases involving press brakes, has actually inspected and tested the subject press brake, and has actually tested the theory of whether the subject bending operation could have been adequately guarded with a light curtain.  In sum, Mr. Prewitt has amply satisfied the requirements of Federal Rule of Evidence 702 and *Daubert*.  Plaintiff's motion to exclude the testimony of Mr. Prewitt should be denied.

**Cincinnati Incorporated's Motion for a Rule 104 Hearing**

Because Plaintiff failed to depose Mr. Prewitt, the Court may lack an evidentiary record to conclude that Mr. Prewitt is qualified and that his opinions are reliable.  For this reason, pursuant to Rules 104(a) and (c) of the Federal Rules of Evidence Cincinnati moves the Court to conduct a preliminary pre-trial evidentiary hearing regarding the qualifications of Mr. Prewitt and the admissibility of his opinions.  Since this Court does not have the benefit of Mr. Prewitt's deposition transcript, the Court can effectively and efficiently make its preliminary assessment regarding Mr. Prewitt through an evidentiary hearing as mandated by the Supreme Court in *Daubert.*   Since this Rule 104 hearing will be outside the presence of the jury before trial or before Cincinnati's case in chief, it will expedite the trial, will not prejudice either party, and will not cause undue delay.

**CONCLUSION**

Parts I and VI of Plaintiff's motion in limine should be denied because Cincinnati is entitled to present evidence supporting its affirmative defenses that the actions of Plaintiff's employer caused the accident.  As well-reasoned decisions in the Fifth Circuit, Mississippi, and other courts have held, Cincinnati may therefore introduce evidence of OSHA regulations and evidence showing that Hunter Engineering knew or should have known about safety issues relating to using press brakes. Part II of Plaintiff's motion in limine should be denied because the opinion of Cincinnati's expert

satisfies the reliability tests of Rule 702 and *Daubert*.  Finally, Cincinnati agrees to Part III and IV

of Plaintiff's motion in limine excluding evidence of collateral benefits and settlements and also

agrees to Part V regarding requests of counsel so long as it also applies to Plaintiff.

Respectfully submitted,

CINCINNATI INCORPORATED

BY:    S/ Roland M. Slover
       ROLAND M. SLOVER, MSB # 6846
       STEVEN H. RAY, *Pro Hac Vice Admission 5/23/05*

OF COUNSEL:

Roland M. Slover, Esq., MSB #6846
**FORMAN PERRY WATKINS KRUTZ & TARDY LLP**
200 South Lamar Street
City Centre Building, Suite 100 (39201-4099)
P.O. Box 22608
Jackson, Mississippi  39225-2608
Telephone:  (601) 960-8600

Steven H. Ray, Esq. *(pro hac vice admission 5/23/05)*
**DINSMORE & SHOHL, LLP**
255 East 5th Street, Suite 1900
Cincinnati, OH 54202
Telephone: (513) 977-8408

## CERTIFICATE OF SERVICE

I, Roland M. Slover, the undersigned attorney, do hereby certify that I have this day electronically filed the forgoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

John Hunter Stevens
GRENFELL, SLEDGE & STEVENS
1659 Lelia Drive
Post Office Box 16570
Jackson, Mississippi 39236-6570
ATTORNEY FOR PLAINTIFF

Clifford B. Ammons, Esq.
WATKINS & EAGER
400 E. Capitol Street, Ste. 300
Jackson, MS 39205-0650
ATTORNEY FOR LUMBERMAN'S MUTUAL

This, the 12th day of October, 2005.

S/ Roland M. Slover
ROLAND M. SLOVER