SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

OCT 1 4 2005

T. MORLIN CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

LARRY JAMES                                          PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:03CV525LN

CINCINNATI INCORPORATED, AN
OHIO CORPORATION; AND A COMPANY;
B COMPANY; AND C COMPANY                             DEFENDANTS

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

COMES NOW, LARRY JAMES, Plaintiff in the above styled and numbered cause and files

this Response to Defendant's Motions *in Limine* and would show unto the court as follows to-wit:

### I.    INTRODUCTION

Defendant, Cincinnati Incorporated ("Cincinnati") has filed a motion *in limine* to exclude the

testimony of the plaintiff's expert, L. D. Ryan.  In that motion, Cincinnati incorrectly states the

qualifications of Plaintiff's expert and misrepresents the basis and substance of the opinions given.

Dr. L. D. Ryan is extremely well qualified expert mechanical engineer.  Dr. Ryan carefully analyzed

the circumstances which brought about the injury in this case, reviewed the relevant industry

standards and government regulations, reviewed the available design alternatives, including those

patented by Cincinnati, and reliably applied that information to the facts in order to reach his

conclusions in this case.  Therefore, Dr. Ryan's testimony is admissible and should be allowed in

order assist the jury in determining the issues in this case.

Defendant, Cincinnati Incorporated has also filed a motion *in limine* to exclude any testimony

regarding safety standards established by other countries.  These standards are relevant to show that

1

Cincinnati has alternative feasible designs, that they have the ability to ship a reasonable safe product to the end user and that they have notice of the dangerous propensities of the products that they manufacture. Therefore, those standards should be admitted.

II.   ARGUMENT

**A.   PLAINTIFF'S EXPERT**

Pursuant to Rule 702 of the Federal Rules of Evidence, "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is a product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." F.R.E. 702 (As Amended 2000). This is the post-*Daubert* amended rule. And all expert opinions are subject to the test for reliability promulgated in *Daubert* and its progeny.

    **1.   L. D. Ryan, PhD, PE is qualified to offer opinions in the field of engineering regarding press brakes.**

In making a determination regarding the admissibility of Dr. Ryan's testimony, the initial question is whether he is qualified. A review of his CV clearly establishes that he has both the education and training to render opinions in the field of engineering. (See CV of L. D. Ryan attached hereto as *Exhibit "1"*). However, beyond his education and experience in the field of engineering, Dr. Ryan has considerable hands-on experience both in the design and use of press brakes. (See page 30 of L. D. Ryan's report, attached hereto as *Exhibit "2"*). From 1962-1963, Dr. Ryan actually worked as a design engineer as designer of a press brake known as the "Maxi-

2

Press". Dr. Ryan also designed a press which was used for a number of years by a company by the name of Alternative Designs in order to fabricate cages. From 1991 to 1993, Dr. Ryan served as COO for Ryan Systems which used a mechanical Cincinnati press brake in its day to day operations. Accordingly, L. D. Ryan is an immensely qualified mechanical engineer. Furthermore, he has been accepted by the Courts as an expert in the field of engineering and has testified in similar, if not identical cases, to the present case all over the country in state and federal courts. (See L.D. Ryan's CV and Court History attached hereto as *Exhibit "1"*).

2.    **Dr. Ryan had sufficient information upon which to base his opinions.**

As is evidenced by his report, Dr. Ryan clearly had sufficient facts upon which to base his testimony. He was provided the specific model of press brake at issue. He was able to reconstruct the accident based upon an interview with the plaintiff. Furthermore, he reviewed the depositions of several of Hunter Engineering's employees, including Allen Parish, David Bolden, Kevin McPhearson, and Henry Steen. Based upon the information provided through these Hunter Engineering employees and the plaintiff himself, Dr. Ryan was clearly aware of the configuration of the press brake, its use at the time of the plaintiff's injury, the type and shape of material being fabricated, and how the injury occurred. In fact, Defendant and its expert do not disagree with the facts and data upon which Dr. Ryan bases his opinions.

3.    **The methods employed by Dr. Ryan in reaching his opinions are clearly the proper and appropriate method used in the industry and, in fact, is the method Cincinnati recommends its end users employ.**

Next, in determining the admissibility of Dr. Ryan's testimony, the court must find that the testimony is a product of reliable principles and methods. Dr. Ryan's opinion are based on well-established engineering principles and the Defendant's Motion *in Limine* fails to provide a

3

factual or legal basis that would support the disqualification of Dr. Ryan in this case. Based upon Dr. Ryan's report he reviewed the relevant industry standards and government regulations applicable to the safe use of a press brake including, but not limited to, ANSI, OSHA, and foreign standards all utilized by the Defendant. He then reviewed the available safety devices and based upon his experience and training made a determination that an alternative design was available which would have prevented the injury in this case, an alternative design which was in fact put on the machine after the accident. Cincinnati's position that this is not a reliable method for determining the proper safety equipment is quite curious.

According to the Defendant's Motion *in Limine*, Cincinnati has no legal obligation or duty to manufacture the press brake with any regard to the safety of the user. In fact, the Defendant has gone to great lengths to argue to this Court, including providing their own expert testimony that they have no obligation to manufacture this product in a safe manner and instead the duty to make their product safe is something that should be passed on to the ultimate consumer of the product or in this case the Plaintiff's employer.

Additionally, the Defendant argues that a mechanical engineer such as Dr. Ryan is not qualified to testify as to the safety and design of their product unless he has conducted tests on the product and has previously designed a similar product or safety mechanisms for this kind of product, while at the same time arguing the Plaintiff, or his expert, should be required to go out and purchase a press brake for $50,000.00 and then design its own safety mechanisms for the product.

Clearly, the method employed by Dr. Ryan is the proper method for reaching an opinion on the issues in this case. In fact, this is the precise method, Cincinnati maintains Hunter

Engineering should have employed.    Therefore, the fact that Cincinnati maintains that the plaintiff's expert has employed improper methods is clearly contrary to the facts in this case. Instead, Cincinnati seems to argue that these methods are correct but Cincinnati does not have to employ them.  However, the law is clearly contrary to that position.

Pursuant to the Mississippi Product Liability Act, a manufacturer or seller of a product can be held liable if a Plaintiff proves that a defective and unreasonably dangerous condition existed on the product which proximately caused the damages to the Plaintiff.  Miss. Code § 11-1-63 (Miss 2002).  The Defendant can be liable to the Plaintiff if the press brake was designed defectively at the time of manufacture and the design rendered the press unreasonably dangerous and this condition caused the injuries.  There is no question that the subject press brake was dangerous.  However, the basic defense of the Defendant and the major issue in the case is whether applying generally accepted engineering principles, the Defendant had any duty to manufacture their product and eliminate or minimize the risk of injury to a known danger.  Dr. Ryan has provided the relevant industry standards regarding these duties which are addressed in the Plaintiff's expert report, a copy of which is attached hereto as *Exhibit "2"*.

4.  **Dr. Ryan has applied the principles and methods reliably to the facts of this case.**

The final issue in determining the admissibility of an expert witness's testimony is whether the principles and methods have been applied reliably to the facts of the case.  Based upon facts of this case and the very same methods Cincinnati asserts the employer should have employed to make Cincinnati's product safe, Dr. Ryan determined that the press brake should have been outfitted with a safety device know as a light curtain and that the light curtain was a feasible alternative design which should have been employed to prevent Mr. James's injuries.

In support of its position for the exclusion of Dr. Ryan, Cincinnati relies upon the case *Guy v. Crown Equipment*, 2004 WL 2898063 (5th Cir. 2004). After careful review of that opinion, the Plaintiff agrees that *Guy* is applicable to this case. However, *Guy* clearly supports in the inclusion, rather than exclusion, of Dr. Ryan's testimony. In that case, the expert was excluded not because of an inability to test alternative designs but rather because he was unable to definitively offer a specific feasible design alternative. Dr. Ryan clearly has stated that the specific feasible design alternative in this case was the light curtain. This is, in fact, the device that is now installed on the very press brake which caused the injury. There was no reason to test the light curtain; it is a proven safety device for use on press brakes which is used worldwide and to which Cincinnati owns a patent (dating back to the early 1970s) and regularly installs on press brakes. (See Deposition of Ralph Wellington at pages 18, 19, attached hereto as *Exhibit "3"*).

Evidence at the trial will reveal that after the Plaintiff's accident, the Plaintiff's employer purchased a similar device specifically for the purpose of preventing another injury such as the one suffered by Mr. James in this case. This Defendant was paid to assist in the installation of that product on the machine they sold to the Plaintiff's employer. Clearly, the fact that in applying the same methods to the facts the employer reached the same conclusion as the Plaintiff's expert shows the reliability of Dr. Ryan's conclusions. In fact, the Defendant agreed and assisted with the installation of those appropriate safety devices.

Additionally, Dr. Ryan will testify that the manufacturer has a duty to safeguard the equipment that it manufactures. Again, this testimony is reliably based upon the industry standards and is further supported by the facts in this case. Amazingly, the Defendant will seek to argue at trial that they have no duty to put safety devices on their machines and that this is

something that should be transferred to the purchaser of their product; however, all the evidence suggests that the Defendant knew exactly how and for what purpose this machine was being used at the time it was purchased (See Deposition of Ralph Wellington at pages 23-31 attached hereto as *Exhibit "3"*). Defendant came to Mississippi to set up the press at the time of purchase, maintained the press and worked on the press over the years and, in fact, knew full well that the Plaintiff's employer could not install a safety device on their product without their assistance. Dr. Ryan's testimony, which is reliably based upon industry standards, will show that the Defendant failed to provide a reasonably safe product. The Defendant's argument is illogical.

5.    **The qualifications and admissibility of Dr. Ryan's testimony in this type case is not a case of first impression for this court.**

Likely the most persuasive reason that Defendant's Motion *in Limine* should be denied is that Dr. Ryan has already been recognized by the United States District Court for the Southern District of Mississippi as an expert qualified as a mechanical engineer in a similar case. In an unpublished opinion filed in this Court, United States District Court Judge William Barbour (in an identical motion to exclude L.D. Ryan) conducted a *Daubert* hearing and found that the Plaintiff's expert L.D. Ryan was qualified to testify concerning a similar machine. (See *Glouster Bryant vs. United Container Machinery, Inc.* et al Civil Action No. 3: 01CV06BN) Attached hereto as *Exhibit "4"* is a copy of the Opinion and Order concerning the Motion for Summary Judgment, see page 8. *Bryant* involved a printer slider 60-inch press, Judge Barbour after an exhaustive *Daubert* hearing denied a Motion *in Limine* filed by United Container, Inc., to exclude his testimony. In addition, Plaintiff attaches hereto as *Exhibit "5"* the transcript of the *Daubert* hearing in *Bryant* which includes the rulings of Judge Barbour allowing his testimony.

In summary, the Court found that Dr. Ryan was a "qualified mechanical engineer." The Court discussed the gate keeping function of Federal Rule of Evidence 702, which is equally applicable to the present case. The issue in *Bryant* as is the issue in this case is whether the machine was defectively designed. Dr. Ryan's opinions are based on established mechanical engineering principles which have been in existence for a substantial period of time. Like *Bryant*, these elements have been recognized in the mechanical engineering field and have been subject to peer review. Thus, testing or the actual making of the prototype machine is not necessary. (See portions of the *Bryant Daubert* hearing previously attached hereto as *Exhibit "5"*).

## B.    FOREIGN STANDARDS

Defendant has filed a Motion *in limine* to exclude the introduction of any foreign standards. This Defendant sells its products internationally in "all free world countries." (See Deposition of Ralph Wellington at pages 39, 40 attached hereto as *Exhibit "3"*). In certain countries, specifically including those in Europe, certain safety standards have been promulgated which requires Cincinnati to provide press brakes with appropriate safety devices and guards, such as those opined by Plaintiff's expert. These regulations and the fact that Cincinnati has available devices which comply with those standards to protect European workers is relevant to show that when required Cincinnati employs feasible alternative designs as discussed and opined by Plaintiff's expert. The Defendant advertises and sells these guarded machines in other countries. (See Deposition of Ralph Wellington at pages 99-102 previously attached hereto as *Exhibit "3"*). These standards put Cincinnati on notice of the risks which are associated with use of its products. Furthermore, only its domestic products require the employers to design its own protective equipment. The issue of industry standards is paramount in this case. Defendant has

8

testified that all but one or two of its competitors are <u>foreign</u> companies. (See Deposition of Ralph Wellington at pages 20-22, emphasis added, previously attached hereto as *Exhibit "3"*). Certainly, these standards are applicable and evidence of use in the industry and Defendant's admitted competitors. Today, more so than in the past with the advent and use of the internet as a major marketing tool, the industry standards, as admitted by Defendant, is world-wide or at least throughout all free world countries, specifically including the European countries. Therefore, those standards are relevant to the issues to be decided by the jury in this case.

### III.    CONCLUSION

The Plaintiff submits that pursuant to Federal Rules of Evidence 702, L.D. Ryan satisfies the requirements of said rule and there has been no showing that his testimony is not reliable. Plaintiff's expert is expected to testify as to the defective condition of the press brake manufactured by the Defendant based on the established mechanical engineering principles and simplified factors that have been subject to peer review and testing for decades. The Defendant cannot urge any lack of reliability as to Dr. Ryan's feasible alternative design inasmuch as the alternative design of the safety guard in this case, the light curtains or presence sensing device, is a product that has been in existence for many years and is used everyday on products manufactured by the Defendant and other similar manufacturers. (See Plaintiff's expert report of L.D. Ryan, previously attached hereto as *Exhibit "2"*). Furthermore, this Defendant had its own patent for such a device since the early 1970's. (See Deposition of Ralph Wellington at pages 18-19, previously attached hereto as *Exhibit "3"*). These alternative designs have been around for decades. The Defendant has presented no evidence whatsoever which is sufficient to logically eliminate the credibility of Dr. Ryan's testimony.

The Plaintiff submits that the Defendant's reliance on *Daubert* to exclude the testimony of L. D. Ryan in this case is a misapplication of the *Daubert* factors   To accept the Defendant's arguments as valid, never under any circumstance or situation would a Plaintiff in the instant case be able to prove that the Defendant's press brake were defective pursuant to the Act.  There is no doubt that under the Defendant's interpretation of Rule 702, no engineer would qualify as an expert concerning the defective and dangerous condition and design of their product.  This interpretation is inaccurate and clearly is against the overwhelming weight of *Kumho Tire Company v. Carmichael*, 526 U.S. 137 (1999) and the cases that followed.

The Plaintiff submits that L.D. Ryan is overwhelmingly qualified to testify in this case having not only been involved in the design and guarding of similar industrial products and identical type press for many years, he has also been employed as an engineer for a manufacturer of press brakes.  Dr. Ryan applied the method Cincinnati contends the employers should have employed and reliably determined that light curtains would have been the better feasible alternative design.  Based on these well-established principles and Dr. Ryan's report, the Defendant's Motion *in Limine* should be denied.

Certain standards established by foreign countries are relevant to show that Cincinnati has alternative feasible designs, that they have the ability to ship a reasonable safe product to the end users and that they have notice of the dangerous propensities of the products that they manufacture. Therefore, those standards should be admitted.

RESPECTFULLY SUBMITTED, this the 14th day of October, 2005.

By: _/s John Stevens_____
    JOHN HUNTER STEVENS - MSB #8528
    ATTORNEY FOR PLAINTIFFS

10

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed a true and correct copy of the

above and foregoing *Plaintiff's Response to Defendant's Motions in Limine* with the Clerk of

the Court using the ECF System which sent notification of said filing to the following:

Roland M. Slover, Esq.
Forman, Perry, Watkins, Krutz
  & Tardy, LLP
Post Office Box 22608
Jackson, MS 39225-2608

Steven H. Ray, Esq.
Dinsmore & Shohl, LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
       *Attorneys for Defendant, Cincinnati Incorporated, an Ohio Corporation*

On this the 14th day of October, 2005.


       s/ John Stevens
       JOHN HUNTER STEVENS